## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**JOHN and NANCY LEWIS**                                                        **PLAINTIFFS**


**v.**                            **CASE NO. 3:05-CV-0066 GTE**


**CITY OF DIAZ; OFFICER CHARLES W. MOSS,
Individually and In His Official Capacity as a
Chief of Police for the Diaz Police Department;
JACKSON COUNTY - JACKSON COUNTY
SHERIFF'S DEPARTMENTand JIM BISHOP,
Individually and In His Official Capacity as
Sheriff of Jackson County;STACEY SULLIVAN,
Individually and in His Official Capacity as
Deputy for the Sheriff's Office of Jackson County**                    **DEFENDANTS**


### ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Presently before the Court is a motion for Partial Summary Judgment filed by Separate

Defendants' Jackson County, Jackson County Sheriff's Department and Jim Bishop, individually

and in his official capacity, and Stacey Sullivan, in his official capacity only.

**I.      Background**

The Court views the facts in a light most favorable to the non-movant.  On May 18, 2004,

Mr. Lewis was outside his home visiting with his friend Randolph Jiles, when Deputy Sheriff

Sullivan and Diaz Police Chief, Charles Moss, arrived in separate police units at the front of Mr.

Lewis' home in Diaz, Arkansas.[1]  After Deputy Sullivan identified Mr. Lewis, he informed Mr.

---

[1]Depo. of John Lewis at pp. 29-30, Exh. A to Defendants' Motion for Partial Summary
Judgment (hereinafter "Defendants' Motion").

Lewis that his bull was out, and Mr. Lewis replied that he would get the bull back in.[2]  Deputy

Sullivan told Mr. Lewis that this had happened every day for the last two weeks, which Mr.

Lewis denied, and that Deputy Sullivan had been to his house six or eight times, but that Mr.

Lewis would not come to the door.[3]  Mr. Lewis replied, "That's a damn lie."[4]  Chief Moss, who

was three to four feet behind Mr. Lewis at this point, said something.[5]  Mr. Lewis turned around,

pointing his finger, and told Chief Moss, "Hey, I'm getting hard of hearing.  I can't hear you, and

I can't talk to but one of y'all at a time anyhow, so you'll have to get back around here."[6]  As Mr.

Lewis turned back around and dropped his hand down, Chief Moss grabbed his hand, "jerked"

his left hand up, and handcuffed his left arm.[7]  Then, Deputy Sullivan jumped on his shoulders

and jerked his right arm up behind him.[8]  Mr. Lewis asked, "What in the world are you doing?,"

and Chief Moss replied, "We're going to teach you that you can't shake your finger in my face."[9]

Chief Moss turned Mr. Lewis around, and Mr. Lewis told him, "I've had neck surgery about ten

---

[2]*Id.* at 29.

[3]*Id.* at 29-30.

[4]*Id.* at 30.  Deputy Sullivan has testified that John Lewis called Deputy Sullivan a "goddamn liar."  Plaintiffs' Response to County Defendants' Motion for Partial Summary Judgment, Exhibit 3 (p. 40 of Deputy Sullivan's Deposition).

[5]Depo. of John Lewis at p. 30, Exh. A to Defendants' Motion.

[6]*Id.* at 30.

[7]*Id.* at 30-31.

[8]*Id.*

[9]*Id.* at 31.

years ago, and I don't want you to push down on my neck now."[10]  Chief Moss said, "I've heard

that before."[11]  Mr. Lewis then told Chief Moss, "I've got to go to the bathroom.  Please let me go

to the bathroom.  I promise, you can go in there with me.  I've got my hands handcuffed behind

me, you know, I can't do anything.  Just let me go in there.  I don't want to go in my pants."[12]

Chief Moss stated once again, "I've heard that before," and pushed Mr. Lewis toward the squad

car.[13]

  At this point, Mr. Lewis did not know where Deputy Sullivan was standing, but knew that

Deputy Sullivan was behind him somewhere.[14]  Either Deputy Sullivan or Chief Moss pushed

down the back of Mr. Lewis' head, Mr. Lewis lost bowel control, felt a pop, and everything

"went black."[15]  Mr. Lewis could no longer see anything, but could still hear.[16]  Mr. Lewis nearly

fell down, but "they grabbed [him] and jerked [him] up and went to shoving [him] on to the

squad car."[17]  Mr. Lewis told Chief Moss that he had lost bowel control, and Moss stated, "You

done that on purpose."[18]  When Mr. Lewis got to the squad car, "They opened the door, and one

---

[10]Depo. of John Lewis at p. 31, Exh. A to Defendants' Motion.

[11]*Id.* at 32.

[12]*Id.*

[13]*Id.*

[14]*Id.* at 33.

[15]Depo. of John Lewis at pp. 33-34, Exh. A to Defendants' Motion.

[16]*Id.* at 33.

[17]*Id.* at 34.

[18]*Id.*

of them, as they was pushing [him] down in that squad car, kicked [him] in."[19]

Mr. Lewis was transported to the Jackson County Sheriff's Department.  Mr. Lewis was later released and taken home by his wife.  Subsequently, the charges that were filed against Mr. Lewis, which were filed by Chief Moss of the Diaz Police Department for resisting arrest, disorderly conduct and allowing livestock to run at large, were all dismissed at the request of the prosecution in the Diaz City Court.  On April 18, 2005, Plaintiffs filed their Complaint alleging violations of their civil rights pursuant to 42 U.S.C. § 1983, the tort of outrage, violations of the Arkansas Civil Rights Act, and assault and battery.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,'that the record does not disclose a

---

[19]*Id.*

4

> genuine dispute on a material fact.  It is enough for the movant to bring up the fact
> that the record does not contain such an issue and to identify that part of the
> record which bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute exists on any
> material fact, it is then the respondent's burden to set forth affirmative evidence,
> specific facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th

Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] . . .

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its

motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute

on a material fact, the non-moving party may not rest upon the mere allegations or denials of his

pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth

specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The

plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving

party which, after adequate time for discovery, fails to make a showing sufficient to establish the

existence of an element essential to its case, and on which that party will bear the burden of proof

at trial.  *Celotex Corp.*, 477 U.S. at 322.


### III.  Discussion

#### A.  Jackson County Sheriff's Department

Separate Defendants assert that the Eighth Circuit has repeatedly held that County law enforcement agencies are not entities subject to suit.[20]  While many cases support Separate Defendants' assertion,[21] the Eighth Circuit has also set out what a plaintiff must show for a police department to be liable under Section 1983.  *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 807 (8th Cir.1994); *see also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (sheriff's departments are not *usually* considered legal entities subject to suit under Section 1983) (emphasis added); *Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1053 (E.D. Mo. 2000) (finding that the Eighth Circuit Court of Appeals has previously determined that police departments are not suable entities, but instead are merely divisions of city government, but noting the decision in *Tilson*).

This Court previously dismissed Separate Defendant Diaz Police Department, but questioned Defendant's position that a city police department can never be subject to suit under Section 1983.  The Court noted that the City of Diaz, Arkansas had been named a Defendant here, so there was no prejudice suffered in dismissing the Diaz Police Department.  Here, Plaintiffs do not object to the Court's dismissal of Jackson County Sheriff's Department provided Jackson County is liable for any provable Section 1983 claim Lewis makes against

---

[20]*Brown v. Fifth Judicial Drug Task Force*, 255 F.3d 475 (8th Cir. 2001) (affirming the district court's dismissal of an unincorporated, intergovernmental, multijurisdictional drug task force for "plain error"); *Edwards v. Baer*, 863 F.2d 606, 609 (8th Cir. 1988) (holding that the St. Louis Board of Police Commissioners is not a suable entity. "Jurisdiction * * * can only be obtained by suing its individual members.").

[21]*See also Ketchum v. City of West Memphis,* 974 F.2d 81 (8th Cir.1992) (holding that the West Memphis Police Department and Paramedic Services are departments or subdivisions of the City government and not separate juridical entities).

Bishop, Sullivan, or both.  As Jackson County has been named a Defendant, and no prejudice

will result from dismissing the Jackson County Sheriff's Department, the Court grants Separate

Defendants' Motion for Partial Summary Judgment as to Jackson County Sheriff's Department.

**B.  Separate Defendants Sheriff Jim Bishop in his official capacity and Deputy Stacey Sullivan in his official capacity**

The claims against Sheriff Bishop and Deputy Sullivan in their official capacities are

essentially claims against Jackson County.  *See Liebe v. Norton,* 157 F.3d 574, 578-79 (8th Cir.

1998); *Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1132 (W.D. Ark. 2005).

According to his deposition, Sheriff Bishop is not currently in office.  Plaintiffs have presented

no evidence that Deputy Sullivan was a policymaker.  Therefore, Plaintiff's official-capacity

claims against Sheriff Bishop and Deputy Sullivan are dismissed.

**C.  Separate Defendant Jackson County**

In order to hold a municipality liable under section 1983, a plaintiff must establish that

"the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by [the county's

officers],"or that a "constitutional deprivation [was] visited pursuant to governmental 'custom'

even though such a custom has not received formal approval through the body's official

decisionmaking channels." *Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8th Cir. 1984)

(citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611

(1978)).  Separate Defendants mistakenly lump "*Monell*-type 'custom or policy' of excessive

force" into one category and limit their argument to the "custom or usage" analysis, while

Plaintiffs argue that the unconstitutional actions implemented a policy of Jackson County.

7

However, Plaintiffs' Complaint also alleges that it was the policy and custom of Jackson County to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its officers, and that Jackson County failed to implement or enforce any policy or procedure to prohibit this type of conduct.  The Court will consider these arguments in turn.

### 1.  Official Policy

Plaintiffs frame the issue of the County's liability in terms of official policy.  Therefore, the Court must consider whether the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by Jackson County's officers.  "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy."  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998).  Plaintiffs claim that Sheriff Bishop had a policy which he stated as follows, "I've always said, go along with the officer, get to the office – get to the sheriff's office, and let us try to work it out there.  When an officer in my day as a trainer said that you're under arrest for – essentially you're under arrest, whether he's right or wrong, until you get it worked out."[22]  Plaintiffs interpret this statement by Defendant Bishop as meaning, "In this case it was 'wrong' to seize and arrest Lewis, but Bishop's policy dictates that even when there is no lawful basis to arrest, his deputies are to bring the person down to the office."  Plaintiffs go on to claim that this policy is the antithesis of what Bishop and Sullivan stated the policy was when confronted with an excessive force situation created by a fellow law

---

[22] Bishop Depo. at p. 37, Exhibit 6 to Plaintiffs' Response.

enforcement official, *i.e.*, that Bishop's deputies have the responsibility to stop Newport police officers from using excessive force.[23]  Plaintiffs then attempt to piece these two "policies" together by arguing that the policy manual for the Jackson County Sheriff's Office provides for instances where there are conflicting orders, and that when conflicting orders[24] are given, the deputy "shall respectfully call attention to such conflict.  If the superior officer giving the order does not alter or retract the conflicting order, then *his order shall stand* and, under these circumstances, the responsibility shall be his."[25]

### 2.  Custom or Usage

"Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a 'custom or usage' with the force of law."  *McGautha v. Jackson County, Mo., Collections Dept.*, 36 F.3d 53, 56 (8th Cir. 1994).  "This standard serves to prevent municipal evasion of liability through improper delegation of policy responsibility or acquiescence in pervasive constitutional

---

[23]*Id.* at 9..

[24]The Court notes that the context of the statement of Sheriff Bishop as it relates to complying with an officer's orders is unclear since the previous page of the deposition was not included in Exhibit 6, part of the sentence not quoted states, "relax his arm to be handcuffed," and the next statements deal with resisting arrest.  Depending upon the context, the statement could be interpreted as meaning that a deputy sheriff should go along with another officer's arrest, even if it is "wrong," and figure it out when he or she gets back to the station, or that the individual being arrested should go along with the officer's orders, even if the arrestee believes that the arresting officer is "wrong."  Furthermore, these two "policies" are not necessarily in conflict, as the suggested response of an officer in regard to an illegal arrest by another officer versus the suggested response of an officer in the event another officer is using excessive force may be different, and therefore, the conflicting orders policy may not be applicable.

[25]*See* Exhibit 11 to Plaintiffs' Response. (emphasis added).

violations by county employees." *Id.* at 56-57. "'[C]ustom or usage' is demonstrated by: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation." *Ware*, 150 F.3d at 882. "Liability for an unconstitutional custom or usage, however, cannot arise from a single act. " *McGautha*, 36 F.3d at 57 (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Williams-El v. Johnson,* 872 F.2d 224, 230 (8th Cir. 1989) (one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)).

### 3. Analysis

As noted above, Plaintiffs contend that Deputy Sullivan's actions on May 18, 2004, reflect a policy or custom on the part of Jackson County, Arkansas. Further, Plaintiff argues that Jackson County is liable as the alleged policy led to the alleged violation of Plaintiff's constitutional rights. In this case, there is a question of whether Deputy Sullivan or Chief Moss pushed down the back of Mr. Lewis' head, which allegedly caused Mr. Lewis to lose bowel control, feel a pop, and make everything "[go] black."[26] There is also the question of whether Jackson County has a policy in place that authorized the use of force in the manner Deputy Sullivan possibly utilized it or whether Jackson County had a policy in place that allowed Deputy

---

[26]Lewis Depo. at pp. 33-34, Exhibit A to Defendants' Motion.

Sullivan to assist in making a "wrong" arrest, which allegedly led to the injuries complained of by Lewis.  Sheriff Bishop has made statements which could possibly be interpreted as a policy of compliance when one officer is making an illegal arrest.[27]

With regard to liability based upon official policy, in view of the factual dispute presented by the disputed existence of an official policy regarding compliance by a Jackson County deputy when another officer is making an illegal arrest and a lack of clarity as to whether Jackson County authorized the level of force possibly utilized by Deputy Sullivan, this Court determines Plaintiffs have sufficiently offered evidence of an alleged constitutional violation to survive summary judgment as to their official policy claim against Jackson County.[28]  It remains to be seen whether Plaintiffs will survive a motion for directed verdict at the end of their case-in-chief, but the Court denies at this time summary judgment as to Defendant Jackson County.

However, as discussed above, Plaintiffs have presented no evidence that Sheriff Bishop received notice that Deputy Sullivan was prone to making illegal arrests by using excessive force or allowing other officers to use excessive force in the course of making an illegal arrest, as Plaintiffs have produced no evidence to contradict Sheriff Bishop's testimony that none of his officers have been sued for excessive force and that there have not been allegations of excessive force made against his Department other than the complaint made by John Lewis.[29]  Plaintiffs have presented no evidence that Sheriff Bishop or any other county official had notice that its

---

[27] Bishop Depo. at p. 37, Exhibit 6 to Plaintiffs' Response.

[28] *See Marley*, 383 F. Supp. 2d at 1133-34.

[29] *See* Plaintiffs' Response to the Statement of Undisputed Material Facts, Plaintiffs' Response 4.

training procedures were inadequate and likely to result in a violation of constitutional rights. Plaintiff John Lewis admits that he "has never been aware of any prior incident where excessive force has been alleged against any Jackson County Deputy."[30]  Finally, Plaintiffs admit that Stacey Sullivan has testified that he has never been disciplined as a law enforcement officer, and offer no proof to contradict this information, aside from a general allegation questioning Deputy Sullivan's credibility.[31]  It is obvious that Plaintiffs cannot establish liability through "custom or usage" because Plaintiffs cannot establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by Deputy Sullivan or deliberate indifference to or tacit authorization of such conduct by county officials after notice to county officials of that misconduct.  Therefore, summary judgment as to Defendant Jackson County, Arkansas, is granted with regard to liability based upon custom or usage.

### D.  Qualified Immunity of Separate Defendant Jim Bishop in his individual capacity

Qualified immunity shields defendants "[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marley*, 383 F. Supp. 2d at 1131-32 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Plaintiffs allege that Sheriff Bishop is liable for violating Plaintiffs' constitutional rights because of Sheriff Bishop's alleged failure to train and supervise.  The Court finds that based upon the record at this point, Sheriff Jim Bishop is not entitled to qualified immunity.

---

[30]*See* Plaintiffs' Response to the Statement of Undisputed Material Facts, Plaintiffs' Response 5.

[31]*See* Plaintiffs' Response to the Statement of Undisputed Material Facts, Plaintiffs' Response 3.

"To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right."  *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).  Plaintiffs have asserted that a constitutional violation occurred.  Bishop has stated that if the account given by Plaintiffs' witness, Mr. Jiles, is correct, excessive force was used, although a factual issue still exists as to whether Deputy Sullivan or Chief Moss committed the acts constituting excessive force.[32]  Also, Deputy Sullivan and Sheriff Bishop have testified that based solely upon what Deputy Sullivan testified that he saw and heard, there was no basis to arrest John Lewis for disorderly conduct., and therefore the arrest was unlawful.[33]  The Complaint states that Deputy Sullivan and Chief Moss arrested Mr. Lewis without probable cause and used excessive force when making the arrest.  It is also alleged, as discussed above, that Sheriff Bishop was responsible for implementation of policies in Jackson County that resulted in the illegal arrest and excessive force.  These claims allege violations of constitutional rights that were clearly established at the time of the arrest.  *See Guite v. Wright,* 147 F.3d 747, 750 (8th Cir.1998) ("The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person."); *Habiger,* 80 F.3d at 295 (stating that a person has "a clearly established right under the Fourth Amendment not to be arrested unless there [is]

---

[32]*See* Depo. of Bishop at p. 22, Exhibit 6 to Plaintiffs' Response to County Defendants' Motion for Partial Summary Judgment (hereinafter "Plaintiffs' Response").

[33]*Id.* at 18; Depo. of Sullivan at pp. 56-57, Exhibit 3 to Plaintiffs' Response.

probable cause for [the] arrest").

With regard to the third prong, "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). Rather, Sheriff Bishop may be held individually liable under section 1983 if he directly participated in the alleged illegal arrest and use of excessive force or if his failure to properly supervise or train the offending deputy caused the alleged illegal arrest and use of excessive force. *See Marley*, 383 F. Supp. 2d at 1132 (citing *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996)). As it is undisputed that Sheriff Bishop was not even in town the day of Lewis' arrest, and did not arrive back in Newport, Jackson County, Arkansas, until after all incidents had occurred,[34] Sheriff Bishop may not be held liable for participation in the alleged constitutional violations.

Under the failure to train or supervise theory, the Eighth Circuit Court of Appeals has recognized that a supervisor commits a constitutional violation if his or her failure to train or supervise the offending actor caused a deprivation of constitutional rights.[35] *See id.* (citing

---

[34]*See* Plaintiffs' Response to the Statement of Undisputed Material Facts, Response 13.

[35]"Courts also recognize a second method for determining a constitutional violation by police supervisors, however, it involves the investigation of prior complaints of unconstitutional conduct. Under that test, supervising police officials act unconstitutionally in 'failing to adequately receive, investigate, or act upon complaints of ⋯ [police misconduct] ⋯ if they: 1/ [r]eceived notice of a pattern of unconstitutional acts committed by subordinates; 2/ [d]emonstrated deliberate indifference to or tacit authorization of the offensive acts; 3/ [f]ailed to take sufficient remedial acts; and 4/ [t]hat such failure proximately caused injury.'" *See Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1132 n.1 (W.D. Ark. 2005) (citing *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996)). As in *Marley*, it appears that Plaintiffs made no allegation of Sheriff Bishop's failure to respond to previous actual complaints of unconstitutional conduct, and therefore, the Court has not discussed it here.

*Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996); *Tilson v. Forrest City Police Dep't,* 28 F.3d 802 (8th Cir. 1994)).  According to an Eighth Circuit opinion, for Sheriff Bishop to have violated Plaintiff's constitutional rights by failing to supervise Deputy Sullivan, it must be shown that Sheriff Bishop: (1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure proximately caused injury to Plaintiff.  *Otey*, 121 F.3d at 1155.  Additionally, a supervisory official may be liable if he created a policy or custom under which the unconstitutional practice occurred.  *See Brown v. Missouri Dept. of Corrections*, 353 F.3d 1038 (8th Cir. 2004); *Lansdown v. Chadwick*, 152 F. Supp. 2d 1128, 1146 (W.D. Ark. 2000), *aff'd*, 258 F.3d 754 (8th Cir. 2001) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Regarding Sheriff Bishop's alleged violation of Plaintiff's constitutional rights by failing to train Deputy Sullivan, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 1156.  The Eighth Circuit has held, "It is necessary to show that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need.  In other words, the plaintiff must demonstrate that the [county] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Id.*

As discussed above, a factual dispute exists regarding whether Sheriff Bishop was

responsible for implementation of a policy in Jackson County that authorized the use of force in the manner Deputy Sullivan possibly utilized it or that allowed Deputy Sullivan to assist in making a "wrong" arrest, which allegedly led to the injuries complained of by Lewis.  If Sheriff Bishop created a policy under which the unconstitutional acts alleged occurred, he is not entitled to qualified immunity.  Once again, although Plaintiffs may not survive a motion for directed verdict at the end of their evidence presented at trial as to the charges against Sheriff Jim Bishop in his individual capacity, he is not entitled to qualified immunity based upon the current record.

## CONCLUSION

In sum, Plaintiffs' claims that remain for trial are those claims against Defendants City of Diaz, Officer Charles W. Moss, individually and in his official capacity as Chief of Police, Stacey Sullivan in his individual capacity, Sheriff Jim Bishop in his individual capacity, and Jackson County with regard to liability based upon official policy, but not based upon custom or usage.  This case is dismissed as to Defendants Sheriff Jim Bishop in his official capacity, Stacey Sullivan in his official capacity, and Jackson County Sheriff's Department.

Accordingly,

IT IS HEREBY ORDERED THAT Defendant's Partial Motion for Summary Judgment (Docket #50) be, and it is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants Sheriff Jim Bishop in his official capacity, Stacey Sullivan in his official capacity, and Jackson County Sheriff's Department are dismissed from these proceedings.

IT IS SO ORDERED THIS 23rd day of October, 2006.

16

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE